CONCRETO MIXTO, INC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. RIVERA BARRERAS, JUDGE, Respondent; SIXTO RODRÍGUEZ ET AL., Interveners.

No. C-63-105.    Decided June 8, 1964.

554

*Miguel Marcos Contreras* and *R. Elfrén Bernier* for petitioner.
*Víctor M. Bosch* and *Nicolás Delgado Figueroa* for interveners.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In a brief complaint which hardly contains two paragraphs, 93 employees of the enterprise Concreto Mixto, Inc., resorted to the Superior Court, San Juan Part, alleging as cause of action that during the period involved in the claim —June 15, 1961 to April 1, 1963—complainants worked for appellee more than nine consecutive hours a day without the latter having paid them one-hour meal time at twice the regular rate, as a result of which it owes them "the sum of $40,000 in the specific amounts which for each claimant *appear from the payrolls.*" Pursuant to the provisions of § 3 of Act No. 2 of October 17, 1961, 32 L.P.R.A. § 3120 (Supp. 1963), the corresponding order of summons was issued. Defendant filed its answer, and after denying the averments recited "in the manner in which they are drawn up," it alleged as special defenses (a) lack of sufficient facts to warrant the granting of any remedy; (b) the ambiguity and vagueness of the averments; (c) the impossibility of alleging other defenses, since from the wording of the complaint there do not appear the elements of a claim so requiring, since

there does not appear therefrom any right granted by the existing labor legislation;[1] and (d) that reference is made in the complaint to certain payrolls without specifying to what part thereof it refers.

In this state of the averments, complainants served on the defendant, what appears to be a stereotyped form for wage claims, a form comprising 24 interrogatories, nine of which are in turn subdivided into different questions. The demand or preamble of this writing made it clear that the information requested referred to each one of the 93 claimants. Within the statutory term defendant filed objections in writing to the effect that some of the interrogatories "do not seem applicable to this case," and that the information requested is irrelevant and the search thereof oppressive. At the hearing dealing with these objections, at which only defendant appeared, the propriety of interrogatories Nos. 17, 19, 20, 21(a), 23, and 24[2] was admitted but not as to the remainder. The trial judge sustained the objections, and ordered that the answers to the interrogatories not objected

---

[1] See Act No. 121 of June 27, 1961 (Sess. Laws, p. 261), as amended by Act No. 88 of June 22, 1962, 29 L.P.R.A. § 283 (Supp. 1963, p. 193), which amended § 14 of the Act Establishing the Working Day, 29 L.P.R.A. § 283. *Cf. Sierra Núñez* v. *Construction Equipment Corporation, ante,* p. 136.

[2] The interrogatories not objected to and the answers thereto read as follows:

"17. Has defendant been keeping and actually kept or prepared regular and/or special payrolls in connection with the work performed by complainant?—Yes.

19. Has defendant been using and/or did use a time clock, punching cards, and/or any other mechanical or automatic system for recording the beginning and/or end of complainant's work?—Yes.

20. What record or accounting, if any, did defendant keep to show the daily or weekly hours worked by complainant?—Payrolls and cards.

21. State the total amount of wages (sum accrued) paid by defendant to complainant for all the work performed by him.—$15,938.66.

23. State the names of the witnesses, with their address, which defendant proposes to use to support its contentions.—Jorge A. Juncos, Ramón E. Cancio, Félix Vázquez, and Francisco Aponte.

24. Mention also the documentary evidence which it proposes to use. —That announced at the pretrial conference."

to be formulated within the term of 10 days. It is well to state that two weeks prior thereto a pretrial conference had been held at which the parties stated that they did not wish to amend the averments, and complainants specifically advised that their evidence would consist of the answers to the interrogatories, defendant's payrolls, vouchers, and punch cards of complainants' attendance, and of their testimonies, as well as of any other evidence deemed pertinent and useful.[3]

Complainants moved for reconsideration of the order sustaining the objections to the interrogatories, which the trial court granted "in view of the result in the case of *Sierra* v. *Superior Court*, 81 P.R.R. 540." At the request of appellant Concreto Mixto, Inc., we issued a writ of certiorari to review the latter order.

In *Sierra* v. *Superior Court*, 81 P.R.R. 540 (1959), we stated with full clarity the scope and the limitations of the interrogatories as method for discovery of evidence. We said at pp. 546–48:

". . . no one doubts that the most inexpensive, simple and speedy method to discover evidence is precisely the written interrogatory which can be served on the parties in accordance with Rule 30 of the Rules of Civil Procedure of 1958. The investigation covers a very wide area: all relevant matters of unprivileged character. See *Shell Co.* v. *District Court*, 73 P.R.R. 413 (1952); *Long Corporation* v. *District Court*, 72 P.R.R. 31 (1951); *Peña* v. *Heirs of Blondet*, 72 P.R.R. 8 (1951); and *Water Resources Authority* v. *District Court*, 66 P.R.R. 796 (1947). Nevertheless, the trial court has the power to limit the use of those interrogatories when it deems it advisable in furtherance of justice. There is a favorable presumption in favor of the interrogatories, but this does not mean that they may be rejected or limited if they become oppressive, onerous or unjust. To this respect, the trial judge has a peculiar and specific mission to discharge in the prosecution of the suit, which characterizes his whole function: to interpret and apply the rules on discovery of evidence so as to guarantee a just, speedy, and

---

[3] *Cf. Román Montalvo* v. *Delgado Herrera*, 89 P.R.R. 419 (1963).

inexpensive solution to the litigation. See *Heirs of Guerra* v. *Sánchez*, 71 P.R.R. 756 (1950). It is thus made clear—and justified also—that the rules grant him ample powers to make any order which 'justice requires' to protect the parties or witnesses from any interrogatory or deposition that may cause 'annoyance, unnecessary expenses, embarrassment, or oppression.' Rules 27.2 of the Rules of Civil Procedure of 1958 and 30(b) of the Rules of Civil Procedure of 1943."

Specifically, insofar as wage claims are concerned, we invited attention to the abuses to which the exercise of procedures for discovery of evidence lends itself, and we recognized that in so doing the judges should be more alert in these cases in order to prevent such undesirable situations in their function to protect the litigants through the power to make such protective orders as will prevent improper, onerous, or oppressive situations. The legislative action sought to prevent in a great measure the most frequent situation which gave rise to these complaints, in providing that, notwithstanding the application of the Rules of Civil Procedure to cases involving wage claims, appellee may not use the methods of discovery to obtain information which must appear in the records, payrolls, wage lists, and other records which employers are bound to keep.[4] Section 3 of Act No. 2 of October 17, 1961, 32 L.P.R.A. § 3120 (Supp. 1963, p. 53).

We also said in the opinion in *Sierra* that the criterion of propriety of the information requested is very broad: it includes all matters which may have any possible relevancy to the subject matter of the action, although not relevant to

---

[4] Other additional limitations on the use of methods of discovery in cases involving wage claims are: (a) neither party may submit more than one interrogatory or deposition; (b) nor shall the party take a deposition from the other after having submitted an interrogatory thereto; (c) nor submit an interrogatory after having taken a deposition therefrom; (d) the taking of depositions from *the witnesses* shall not be permitted without court authorization; and (e) the information obtained by the Secretary of Labor or by his agents in the course of the investigations made in the exercise of the powers granted in the Minimum Wage Act shall be of a privileged and confidential character.

the specific controversies raised by the averments. Of course, this does not mean that conceivable information may be requested which, though connected with the work performed, has no bearing on the cause of action adduced. See *Shell Co. v. District Court*, 73 P.R.R. 413 (1952).

■ However, this recognized latitude permitted in the use of interrogatories for the purpose of discovering evidence and of obtaining admissions to simplify the practice thereof does not mean that the court is prevented, in the event of timely objection that such interrogatories are onerous and oppressive, from exercising its discretion in order that, without thwarting the purposes pointed out, the least annoyances be caused to the litigants. Specifically, if the same objective may be obtained by employing another method of discovery, such as the inspection of documents authorized by Rule 31 of Civil Procedure of 1958, the conveniences and prejudice which this particular situation may present should be considered and the interests of *both parties* reconciled. In other words, there is no absolute right to obtain information by means of interrogatories—which presupposes an active investigation task—if an identical purpose may be accomplished by an examination of the documentary evidence, where by so doing the party requested is relieved of actual and unnecessary annoyances. After all, the burden of prosecuting a suit should not fall on only one of the parties.

■ An examination of the interrogatories objected to in this case[5] shows that, with the exception of interrogatories

---

[5] The interrogatories objected to are the following:

"1. On what date did complainant start to render services to defendant?

2. In what capacity or under what classification were those services rendered?

3. Specify the activities, duties, functions and/or tasks which complainant performed since he started to render services and until termination of his employment?

(a) If complainant performed different types of services for

Nos. 16, 18, and 22, the information requested in connection with every one of the 93 claimants may be obtained from an examination of the payrolls. So much so that after the original order of the trial court sustaining the objections to the interrogatories, and even while the motion for reconsideration of such order was pending, the moving party moved for an order to examine "(a) the payrolls comprising the dates

---

defendant, state what these services consisted of and the intervening dates.

4. State the exact date of termination of complainant's services to defendant.

5. What wage per hour, per day, per week, per fortnight, and/or month did complainant earn at the commencement of his work for defendant?

(a) State whether this wage was increased.

(b) On what date was it increased?

(c) To how much was it increased?

(d) State whether further increases were granted, in the same manner required under letters (a), (b), and (c) above, showing the dates and new wages earned.

6. At what time did complainant start to work in the morning, every day of every week, of every month, from the date of commencement to the termination of services for defendant?

7. At what time did his first working period end in the morning, that is, at what time did complainant go out to take food (lunch) every day, every week, every month, since the commencement until termination of his services for defendant?

8. At what hour in the afternoon did complainant resume work after using time for lunch, on the same days and dates required in the preceding paragraph?

9. Until what time in the afternoon did complainant render services to defendant during the same days and dates required in the preceding paragraph?

10. Did complainant work on any day, week, and/or month, in excess of eight (8) hours during the 24-hour day?

11. How many days a week did complainant work for defendant?

(a) Specify the days.

(b) State whether he worked those days during all the weeks comprised between the dates required in question No. 10 above.

(c) If he worked only during some weeks on the days required above, indicate the weeks (comprised between what dates).

12. Did complainant work more than forty (40) hours a week?

(a) If he did, state the number of hours in excess of forty (40) during which complainant worked during each and every day of the

involved in the complaint, showing the wages paid to complainants; (b) the punch cards marked by complainants on the aforesaid dates; (c) the weekly, fortnightly, or monthly day sheets prepared and kept by complainants to show or record the extra or special work performed by them; (d) any other record or document or special payroll prepared by defendant showing the regular, special, or extra work assigned to and/or performed by complainants." Defendant forthwith acquiesced to this motion.

According to the foregoing, a fair proceeding requires that the objection to these interrogatories be sustained as being onerous.

■ Regarding interrogatories Nos. 16 and 18, requiring information which cannot be obtained by an examination of

---

weeks he rendered services to defendant, stating the dates in each week.

13. State whether the extra hours worked in excess of eight hours a day were paid to complainant.

    (a) In the affirmative, state the wage rate (whether double or time and a half) at which he was paid:

        (1) The hours in excess of eight a day.

        (2) The hours in excess of 44 a week.

        (3) The hours in excess of 48 a week.

14. Did complainant enjoy vacation with pay?

    (a) If he enjoyed vacation, state number of days.

    (b) State also the dates of such vacation.

    (c) State also the amount received for such vacation.

15. State whether complainant absented himself from work.

    (a) If so, state the date or dates of absence each year.

    (b) State also whether he was paid leave of absence.

    (c) If so, state the amount or amounts received by him.

16. Who (state names) was complainant's immediate head or supervisor during each working period?

18. Did defendant pay complainant in checks or in cash for the work done by the latter?

21. State the total amount of wages (sum accrued) which defendant paid for all work performed by complainant.

22. Did defendant pay to complainant any sum by way of bonus, commission, or incentive for his work?

    (a) If so, state the sum or sums paid.

    (b) State the date in connection therewith.

    (c) State also on what account."

the payrolls, we shall not disturb the order of the trial judge. The objection to interrogatory 22 should also be sustained, since the information required is clearly irrelevant and immaterial to the issue posed in the action, which is confined to a claim for the time worked during the period for taking food. *Shell Co.* v. *District Court*, 73 P.R.R. 413 (1952).

For the reasons stated, the order of October 15, 1963, of the Superior Court, San Juan Part, will be modified as stated in this opinion, and, as thus modified, it will be affirmed.